IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| J.W. FOWLER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>EPHRIAM IRRIGATION COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 4:20-cv-00015-DN-PK<br><br>District Judge David Nuffer |

Plaintiff J.W. Fowler Company ("JWF") asserts a claim for breach of contract against Defendant Ephraim Irrigation Company ("EIC") arising from the installation of a corrugated metal pipe ("CMP") in a drainage tunnel near Ephraim, Utah.[1] JWF alleges EIC breached implied warranties in the parties' contract by supplying an inadequate CMP and negligently prepared plans and specifications, which caused JWF to incur delays and increased work and expenses.[2] EIC seeks dismissal of JWF's Amended Complaint for failure to state a claim.[3]

Because JWF alleges sufficient facts to state a plausible claim against EIC for breach of an implied warranty, EIC's Motion to Dismiss[4] is DENIED.

---

[1] First Amended Complaint ("Amended Complaint") ¶¶ 4.1-4.9 at 15-16, docket no. 21, filed Aug. 13, 2020.

[2] *Id*.

[3] Motion to Dismiss First Amended Complaint ("Motion to Dismiss"), docket no. 22, filed Aug. 27, 2020. EIC previously sought dismissal of JWF's original complaint for failure to state a claim, raising many of the same arguments raised in its current Motion to Dismiss. Motion to Dismiss, docket no. 13, filed Apr. 22, 2020. EIC's first motion to dismiss was granted, but JWF was given leave to file an amended complaint to correct the deficiencies in its breach of contract claim. Memorandum Decision and Order Granting Motion to Dismiss, docket no. 20, filed July 23, 2020.

[4] Docket no. 22, filed Aug. 27, 2020.

## DISCUSSION

EIC seeks dismissal of JWF's Amended Complaint under FED. R. CIV. P. 12(b)(6).[5] Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[6] A cause of action must be supported by sufficient, well-pleaded facts to be plausible on its face.[7] And in reviewing a complaint, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[8] However, "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation" of the law are disregarded.[9]

JWF's alleges that because EIC supplied an inadequate CMP and negligently prepared plans and specifications, JWF had to undertake extraordinary efforts and increased costs to complete its work.[10] The parties agree that JWF's breach of contract claim is a claim for breach of implied warranty under the *Spearin* doctrine.[11] To state a plausible claim for breach of a *Spearin* implied warranty under Utah law, JWF must allege:

> (1) the parties entered a valid and enforceable contract;
>
> (2) EIC made an affirmative representation regarding the project's plans and specifications that was inaccurate or misleading;

---

[5] *Id*. at 1.

[6] FED. R. CIV. P. 12(b)(6); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[10] Amended Complaint ¶¶ 4.1-4.9 at 15-16.

[11] Motion to Dismiss at 10; Opposition to Defendant Ephraim Irrigation Company's Motion to Dismiss First Amended Complaint ("Response") at 1, docket no. 23, filed September 24, 2020.

(3) JWF reasonably relied on the inaccurate or misleading representation in entering the contract; and

(4) the inaccurate or misleading representation caused JWF to incur extra work or expenses.[12]

JWF's Amended Complaint contains sufficient factual allegations to meet this threshold.

JWF alleges that it entered a public works contract with EIC for the installation of a CMP in a drainage tunnel near Ephraim, Utah.[13] JWF alleges that EIC made the following affirmative representations regarding the CMP and the project's plans and specifications that were inaccurate or misleading:

- The CMP that EIC supplied for the project would be adequate to build the project as laid out in the plans and specifications;

- The CMP's "manufacturer says the [CMP] should be supported at least every 20 feet.";

- EIC's engineer "spoke with two cellular concrete contractors during the design process to determine the feasibility of pumping cellular concrete up to 7,100 fee. Both contractors thought this was feasible.";

- EIC had talked to cellular concrete contractors" who "agreed that the cellular concrete can reach the end of the tunnel."; and

- The project could be completed within the time allowed under the contract.[14]

JFW also alleges that the following aspects of the project's plans and specifications were negligently prepared and defective:

- the requirement to use the CMP that EIC supplied;

- the requirement not to displace or damage the CMP while installing backfill material;

---

[12] *Jack B. Parson Constr. Co. v. State by & through Dep't of Transp.*, 725 P.2d 614, 616 (Utah 1986); *Frontier Founds., Inc. v. Layton Constr. Co.*, 818 P.2d 1040, 1043 (Utah Ct. App. 1991).

[13] Amended Complaint ¶¶ 3.29-3.33 at 8.

[14] *Id*. ¶¶ 3.66 at 14, 4.4 at 16.

- the requirement that the CMP be installed in a specific location in the tunnel on a precise grade;

- the requirement that the CMP have only one grout port;

- the requirement that the CMP be encased with two inches of grout; and

- the requirement that weep holes be installed at 1:30 and 10:30.[15]

JWF alleges that EIC's representations were inaccurate or misleading and that the plans and specifications were negligently prepared and defective because the CMP that EIC supplied was not suitable for the project.[16] JWF alleges the CMP was too thin, too flexible, and lacked the rigidity necessary for the project.[17] This was because the contract required JWF to install supports for the CMP at a "minimum [of] every 20 feet along [the] pipe."[18] But due to the tunnel's configuration, the support spacing was conditioned on the length of the CMP itself, as intermediate supports could not be installed.[19] JWF further alleges that the CMP frequently arrived on site in damaged or defective condition.[20] This caused delays and grout leaks during the CMP's installation because the grout ports and connections between the CMP's sections were not "grout-tight."[21]

---

[15] *Id*. ¶ 3.64 at 13-14.

[16] *Id*. ¶¶ 3.38 at 9, 3.47 at 12, 3.62 at 13, 3.69 at 14.

[17] *Id*.

[18] *Id*. ¶ 3.24 at 7.

[19] *Id*. ¶¶ 3.27 at 7. EIC argues that this allegation is not correct and refers to a sample drawing in the contract documents which demonstrates that intermediate supports were permitted. Motion to Dismiss at 13-14. It is not entirely clear whether JWF is alleging that use of intermediate supports was not permitted under the contract, or that despite being permitted, intermediate supports could not be used based on the tunnel's configuration and the CMP's length. Viewing the allegation in a light most favorable to JWF, the latter is alleged and supports the existence of an affirmative representation in the contract documents that was inaccurate or misleading. JWF also clarified that the specifications were misleading because they implied that it was possible to install supports every 20 feet even though the specifications required the CMP's segments to be no shorter than 20 feet, and the CMP was not rigid enough to resist buoyancy forces at 20-foot spacing. Response at 5; Amended Complaint ¶¶ 3.42 at 11, 3.70 at 15.

[20] Amended Complaint ¶ 3.60 at 13

[21] *Id*. ¶¶ 3.48-3.49 at 12, 3.60 at 13.

4

JWF alleges that EIC's misleading representations and the defective aspects plans and specifications pertain to project's design (where JWF had no discretion to deviate from the plans and specifications),[22] as opposed to performance specifications (where JWF could exercise discretion to achieve an objective or standard).[23] JWF further alleges that it reasonably relied on the representations and the plans and specifications when preparing its bid and when entering the contract.[24] JWF alleges that because of this reliance, it could not comply with the contract's completion date or installation specifications without incurring unanticipated delays and extra work and expenses.[25] Specifically, JWF alleges that it incurred the following delays and extra work and expenses:

- the number of lifts[26] required to install each CMP section doubled from the anticipated number (from four lifts to seven to nine lifts), which substantially increased the time and effort necessary to install each CMP section;[27]

- the original subcontractor performing the concrete injection work refused to complete the project due to issues caused by the inadequate CMP, which necessitated a second subcontractor being hired at increased cost;[28] and

---

[22] *Id*. ¶¶ 3.21-3.25 at 6-7, 3.32 at 8, 3.61-3.65 at 13-14.

[23] EIC argues that the representations pertain to performance specifications because JWF's alleged issues were caused by the methods JWF chose for installing the CMP and what JWF anticipated based on those methods. Motion to Dismiss at 8, 12-14, 17-21. However, viewing the allegations in a light most favorable to JWF, the alleged misleading representations and defective plans and specifications are broader than EIC argues. They pertain to the adequacy of the CMP for installation within the project's design specifications. Amended Complaint ¶¶ 3.24 at 7, 3.47 at 12, 3.57 at 13, 3.60 at 13, 3.62-3.66 at 13-14, 3.69-3.71 at 14-15, 4.5 at 16. And the methods JWF chose for the CMP's installation were based on the representations and plans and specifications. *Id*. ¶¶ 3.28 at 8, 3.36 at 9, 3.67-3.68 at 14. Therefore, JWF has sufficiently alleged that the misleading representations and defective plans and specifications pertain to design.

[24] *Id*. ¶¶ 3.17 at 5, 3.19 at 6, 3.27-3.28 at 7-8, 3.36 at 9, 3.67-3.68 at 14, 3.72 at 15, 4.6-4.7 at 16.

[25] *Id*. ¶¶ 3.24 at 7, 3.38 at 9, 3.42-3.49 at 11-12, 3.55-3.65 at 12-14, 3.69-3.72 at 14-15, 4.4-4.7 at 16.

[26] A "lift" is a method to install cellular concrete in which the concrete hardens between placements (stages) to alleviate the uplift buoyancy forces on the CMP. *Id*. ¶ 3.34 at 8.

[27] *Id*. ¶¶ 3.36 at 9, 3.43 at 11; 3.49 at 12, 3.56 at 12.

[28] *Id*. ¶¶ 3.45-3.56 at 11-12.

- the CMP frequently arrived on site in a damaged or defective condition, which caused delays, as well as extra work and expenses from further grout leaks during installation.[29]

JWF alleges that to date, its resulting increased costs are in excess of $1,000,000.[30] JWF also alleges that while it ultimately installed the CMP that EIC supplied,[31] the CMP is not within the project's slope tolerance specification.[32] And EIC has indicated that it expects JWF to remedy the areas of the CMP that are out of tolerance, which will cause JWF to incur additional time and expense to complete the project.[33]

Accepting JWF's factual allegations as true and drawing all reasonable inferences in a light most favorable to JWF, the Amended Complaint sufficiently alleges a plausible claim for breach of implied warranty against EIC. JWF has alleged

(1) the parties entered a valid and enforceable contract;

(2) EIC made an affirmative representation regarding the project's plans and specifications that was inaccurate or misleading;

(3) JWF reasonably relied on the inaccurate or misleading representation in entering the contract; and

(4) the inaccurate or misleading representation caused JWF to incur extra work or expenses.[34]

Therefore, EIC's Motion to Dismiss[35] is DENIED.

---

[29] *Id*. ¶ 3.60 at 13.

[30] *Id*. ¶ 3.59 at 13.

[31] *Id*. ¶ 3.55 at 12.

[32] *Id*. ¶¶ 3.57-3.58 at 13, 3.71 at 15.

[33] *Id*. ¶ 3.58 at 13.

[34] *Jack B. Parson Constr. Co.*, 725 P.2d at 616; *Frontier Founds., Inc.*, 818 P.2d at 1043.

[35] Docket no. 22, filed Aug. 27, 2020.

## ORDER

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss[36] is DENIED. Within

14 days, the parties must meet, confer, and jointly file a proposed scheduling order which

includes actual dates for proposed deadlines.[37] A copy of the proposed scheduling order, in

WORD format, must also be emailed to utdecf_kohler@utd.uscourts.gov.

Signed December 11, 2020.

BY THE COURT

_____

David Nuffer
United States District Judge

---

[36] Docket no. 22, filed Aug. 27, 2020.

[37] The parties previously filed a proposed scheduling order. Docket no. 19-1, filed July 1, 2020. However, the proposed scheduling order did not include actual dates for several of its proposed deadlines.